UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FERNANDO CANTRES, JR.

        Plaintiff,

v.                                              Case No. 8:09-cv-2168-T-17MAP

TIMOTHY BAILEY, et al.,

        Defendants.

_____

**O R D E R**

        This cause is before the Court on Defendants' motions to dismiss Plaintiff Cantres' 42 U.S.C. § 1983 civil rights case (Docs. 15, 16, 17) and Cantres' responses to the motions to dismiss. (Docs. 24, 25, 31). A review of the record demonstrates that Defendants' motions to dismiss must be **GRANTED, but without prejudice.**

Background

        Plaintiff Cantres names Pinellas County Jail Medical Director, Dr. Timothy Bailey; Pinellas County Jail registered nurse Vicki Scotti; and Pinellas County Jail registered nurse Rick Brennan as defendants in this action. He claims that Defendants were deliberately indifferent to his medical needs and were medically negligent in treating him. Cantres is HIV positive and alleges that he suffers from many symptoms associated with the HIV deficiency syndrome.

Cantres's Allegations

Cantres was arrested April 16, 2009 and booked into the Pinellas County Jail. He informed the "receiving medical screening" staff of his HIV positive status. On April 19, 2009, Cantres submitted a medical request form to the medical staff (See Attachment A to Doc. 1) in which Cantres again informed medical staff of his HIV status and that he was having day and night sweats, had not used the bathroom in 5 days, his stomach hurt, his head had been increasingly hurting, and that "some days he can remember things and some are a blur."

On April 21, 2009, Cantres submitted another medical request form (Attachment B) which was the same as the first, with the addition of his stating that he was hearing voices and that they were "getting louder and harder for him to tune out." On April 23, 2009, Cantres submitted another medical request form (Attachment C) again stating he was HIV positive, was having night sweats, had not had a bowel movement in days; that his stomach hurt and his head hurt.

On April 27, 2009, Cantres submitted yet another medical request form (Attachment D) stating that his doctor increased his calorie intake to 3000 calories a day due to his HIV status, but that he was still losing weight. Cantres stated that he weighed 184 pounds when he was booked into the jail, and that as of April 27, 2009, he weighed 172 pounds. He also complained that he was losing weight fast, was not having regular bowel movements, was having day and night sweats, involuntary shudders, and nightmares; that he was tired; that his neck, shoulder, and back ached. Cantres said that he was sluggish; that he could not sleep; had unexplained memory lapses, mood swings, depression and that he needed to have his CD-4 count and viral load tested.

On May 21, 2009, Cantres submitted another medical request form (Attachment E) stating "how medical staff couldn't verify his HIV status and so gave medical the address and name of the clinic and doctor he was going to." On August 21, 2009, Cantres submitted a medical request form (Attachment F) stating that he was "supposed to go to the chronic clinic on May 18 and stating that he wrote a medical request form asking why he did not go." Cantres states that a nurse told him the reason he did not go to the chronic clinic was that medical needed his medical records from the Hillsborough County Health Department. Then "in the next day or so another nurse came to have the Plaintiff sign a medical release form." He told her that he was not being monitored for his HIV status and that he was having vision problems, losing control of his bladder, having trouble walking, and was losing his balance.

Cantres contends that for months he has not been properly treated for his condition. He also contends that his grievance forms were improperly handled.

As relief, Cantres seeks to be assessed at the County Jail's expense. He wants to be monitored and treated by an outside doctor and receive monthly CD-4 Count and Viral load testing and "whatever else said doctor may deem[s] necessary." He also seeks to receive proper medical treatment for his many other HIV related illnesses.

Standard for Motion To Dismiss

The Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. The plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). As a general proposition (and setting aside for the moment the special pleading requirements that attach to § 1983 claims subject to a qualified immunity defense), the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly,* 550 U.S. 544, 127 S. Ct. at 1965.

*Twombly* applies to § 1983 prisoner actions. *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008). As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

A Complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). On a motion to dismiss, the Court limits its considerations to the pleadings and exhibits attached thereto. *GSW v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

### Defendant Timothy Bailey

While Cantres has named Bailey, he does not allege any conduct by Bailey which constitutes deliberate indifference to a clearly established right, as Cantres's civil allegations in this case are that unnamed "medical staff" at the Pinellas County Jail violated his Constitutional rights pursuant to 42 U.S.C. §1983 due to the alleged failure to treat him properly for his HIV positive condition; notwithstanding, Cantres cannot overcome Bailey's qualified immunity, as his references to Bailey clearly demonstrate that any conduct by Bailey with
respect to Cantres solely was in the context of Bailey's employment as the Medical Director of the Pinellas County Jail; and further, Cantres failed to comply with the applicable Florida statutory provisions pertaining to medical malpractice claims, Fla. Stat. Ch. 766.

Cantres's factual allegations pertaining to Bailey do not state a claim upon which relief may be granted. As demonstrated in Cantres's Complaint, Cantres's HIV positive status was known to medical personnel at the Pinellas County Jail, and Cantres alleges that he complained to unnamed medical staff of symptoms of constipation, weight loss, night sweats and nightmares. See, Attachments to Cantres's Complaint. In response to these complaints, Cantres pleads that he was seen by unnamed medical staff and received medical protocol for the symptoms presented, and that unnamed medical staff attempted to obtain his medical treatment history related to his HIV positive status. Cantres further pleads that he was scheduled for evaluation and treatment at the Pinellas County Jail Healthcare Division to be seen by an unnamed ARNP. See, Attachment F to Cantres's Complaint.

Other than these scant allegations, Cantres does not allege any other facts that he contends constitutes deliberate indifference to his clearly established constitutional rights related to the conduct of Bailey as described in the Complaint. Quite the opposite, however, Cantres alleges a plethora of facts which support the motion to dismiss. Cantres's Complaint contains many facts indicating that in response to his requests for medical treatment, he was repeatedly referred to nurse sick calls (denoted NSC on the attached exhibits), received treatment and care by said practitioners (with denoted prescriptions and protocols on the attached exhibits), and admits that he refused to follow said protocols because he did not believe that they were appropriate for his condition. Of importance to the motion related to Bailey is the fact that while Cantres continually alleges that unnamed "medical staff" failed to provide him the care that he believed he needed, none of these allegations related to unnamed "medical staff" have anything to do whatsoever with Bailey's conduct as related to Cantres. Rather, Cantres's main concern articulated in his Complaint is not that his condition and symptoms were ignored by jail medical personnel, but rather that he was not treated in the manner that he desired --specifically by being sent out to an outside provider (the Chronic Care Clinic).

None of these allegations pertain to any alleged conduct by Bailey. Rather, as to Bailey, Cantres merely alleges that Bailey is a specialist in treating HIV positive patients who evaluated his medical condition (including Cantres's admitted refusal to comply by taking prescribed medication), see Attachment I, and disagreed with Cantres's requested course of treatment --  a dispute that Cantres now characterizes as "gross negligence or deliberate indifference."  See Attachment J,  pg. 4. These allegations are insufficient to state a constitutional claim under 42 U.S.C. § 1983 -- particularly against Bailey who, on

the face of Cantres's Complaint, does not appear to have engaged in any of the conduct complained of and who is entitled to qualified immunity nonetheless.

Cantres cannot show that Bailey was deliberately indifferent to a clearly established constitutional right. The only allegations pertaining to Bailey demonstrate that any conduct attributed to him was within his discretionary authority as the Medical Director at the Pinellas County Jail. Qualified immunity is intended to encourage the vigorous exercise of official authority by shielding government officials from personal liability for civil damages. *Butz v. Economou*, 438 U.S. 478 (1978). The Supreme Court uses a two-prong test to determine whether qualified immunity is appropriate. The threshold inquiry a court must undertake is whether Cantres's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730 (2002). If this threshold inquiry is met, and despite participation in constitutionally impermissible conduct, officials may still be shielded from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 739. Applying this test, the Court should first analyze Cantres's initial pleading, including its many Attachments,[1] to determine whether his allegations establish deliberate indifference to a clearly established constitutional right.

While the HIV positive condition alone may be deemed to be a serious medical condition, *see Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) (HIV positive with hepatitis deemed serious medical need), in *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court established that "deliberate indifference to serious medical needs of

---

[1] Where Cantres's allegations conflict with the facts set forth in the Exhibits or Attachments to his Complaint, the facts in the Exhibits and Attachments control.

prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)). In order to state a cognizable claim under the Eighth Amendment (or the Fourteenth Amendment in the case of a pre-trial detainee), a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle* at 106. However, if Cantres's claim for liability, like here, is built upon, at best, allegations of inadvertent or negligent conduct in diagnosing or treating his medical condition, those allegations do not establish a constitutional violation. *Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir.1989).

Specifically, Cantres must plead three facts -- missing in his Complaint: (1) Bailey's subjective knowledge of a risk of serious harm; (2) Bailey's disregard of that risk; and (3) conduct by Bailey that is more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999). Here, there are no allegations that Bailey disregarded any risk of harm to Cantres. Rather, the only factual allegations related to Bailey are that he is a Board Certified Specialist in HIV, that he reviewed Cantres's medical treatment history, including that at the Pinellas County Jail which included Cantres's refusal to follow the prescribed treatment protocol, and that Cantres believed that Cantres should have received specific tests. At best, Cantres alleges medical negligence -- insufficient to establish deliberate indifference to any right in light of Cantres's admitted, repeated, treatment by unnamed medical staff at the jail. Where the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is "minimally adequate." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). Rather, the response made by public officials to that need must be poor enough to

constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Deliberate indifference is not established where, as here, an inmate admittedly received care and refused to comply with such care because he desired a different mode of treatment. *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir.1985).

In this case, while Cantres alleges that he has a serious medical condition, HIV, for which he believes he was not properly treated, the facts asserted do not state a claim of deliberate indifference to his constitutional rights by the individuals identified as defendants in the Complaint, including Bailey.  Cantres specifically admits, by virtue of the exhibits he attaches to his Complaint, that he requested treatment from medical staff at the Pinellas County Jail, that those requests were received and responded to in the form of Nurse Sick Calls and visits with the ARNP at the Healthcare Division Clinic, during which time said unnamed medical staff requested and researched his prior HIV treatment protocols, discovered that he was not following said protocols, and encouraged him to follow the prescribed treatment provided to him at the jail, treatment that Cantres admits in both the Exhibits, as well as the body of his allegations, that he refused because he did not believe it to be the correct treatment.  A conclusion of deliberate indifference in the form or quality of treatment cannot be reasonably inferred from Cantres's account of not receiving medical tests or medication he desired where the qualified medical personnel who

evaluated Cantres had a difference of opinion regarding the necessity of such tests or medications.[2]

## Qualified Immunity

Notwithstanding the fact that Cantres has failed to state a claim against Bailey, Bailey is entitled to qualified immunity for Cantres's claims. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are .shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) [quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)].

Qualified immunity is based upon the recognition that subjecting governmental officials to personal monetary liability imposes substantial social costs, distracts officials from pressing public issues, deters able people from public service, and inhibits discretionary action. As the Supreme Court stated, "there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Harlow*, 457 U.S. at 814. Qualified immunity is the right "not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the Plaintiff

---

[2] 2 Further, it is well established that Bailey, as Medical Director, cannot be held individually liable for the conduct of the unnamed medical personnel subordinate to him at the Pinellas County Jail under a theory of respondeat superior liability. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "°person" under 42 U.S.C. § 1983); *see also Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)("It is well established in this Circuit that supervisory officials are not liable under §1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.").

complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability . . . . [I]t is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Both the Supreme Court and the Eleventh Circuit interpret qualified immunity broadly. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter v. Alabama A&M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). *See also GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998) ("[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity") (citation omitted).[3]

The defense of qualified immunity may be raised in a motion to dismiss pursuant to Rule 12(b)(6). *Chesser v. Sparks*, 248 F.3d 1117, 1121(11th Cir. 2001). Where the objective circumstances compel the conclusion that an official's actions were undertaken pursuant to the performance of his duties and within the scope of his authority, there is requisite proof that the acts are discretionary and meriting the recognition of qualified immunity. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994). "Discretionary authority" includes all actions of a governmental official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Id*; *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In this case, Cantres's Complaint is devoid

---

[3] *See also Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir. 1997) ("the qualified immunity standard is broad enough to cover some 'mistaken judgment' and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'")(quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986).

of any specific allegation of wrongdoing by Bailey, but rather alleges that unnamed medical staff impliedly acting within the course and scope of their employment with the Sheriff failed to provide him with the treatment for his HIV that he desired. Notwithstanding this, Cantres clearly identifies Bailey as the Medical Director of the Pinellas County Jail, and as such any conduct by him -- though not alleged -- was undertaken within the scope of his duties at the Jail. Accordingly, Cantres bears the burden of showing that qualified immunity does not apply. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Simply, Cantres cannot plead such allegation, because the Complaint and Attachments to the Complaint clearly demonstrate that he was seen by medical staff, prescribed a course of treatment for the symptoms he described, his prior medical records and treatment history were reviewed (by Bailey, a Board Certified Specialist in HIV), and nonetheless, Cantres further alleges that he admittedly failed to comply with the treatment prescribed. Accordingly, Cantres cannot demonstrate facts necessary to overcome Bailey's qualified immunity in this case.

Finally Cantres has failed to comply with the requisite pre-suit requirements under Fla. Stat. §766. While Cantres primarily alleges a violation of 42 U.S.C. § 1983 in his Complaint, he also asserts a claim of medical negligence directly relating to the medical care he has received in the Pinellas County Jail. In keeping with Florida's Medical Malpractice Reform Act, Fla. Stat. Ch.766, Cantres must comply with the enumerated procedural requirements prior to initiating a lawsuit. As in *Nelson v. Prison Health Servs.*, 991 F.Supp 1452 (Fla. M.D. 1997), it is not disputed that Bailey is a "health care provider" for purposes of the Medical Malpractice Reform. *Id.* at 1466.

However, most notably, Cantres has failed to conduct the requisite presuit screening pursuant to Fla. Stat. §766.203(2) and the required notice of intent to sue

pursuant to Fla. Stat. § 766.106(2). Compliance with Chapter 766 is a condition precedent to bringing a suit against any health care provider. *Patry v. Capps*, 633 So.2d 9 (Fla. 1994); *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So.2d 945 (Fla. 1994). The presuit investigation requirements are substantive and not merely procedural. Therefore the law of the forum state is to be applied. *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001).

Because Cantres has failed to satisfy all conditions precedent to filing what is tantamount to a medical malpractice claim, his state claims must be dismissed. *Clark v. Sarasota County Public Hosp. Bd.*, 65 F.Supp.2d 1308 (M.D. Fla. 1998), aff'd, 190 F.3d 541 (11th Cir. 1999); *Danhi v. Charlotte County Sheriff,* 2006 WL 2226323 (M.D. Fla., Aug. 3, 2006), *Gross v. Parker*, 2008 WL 477239 (M.D. Fla., Feb. 19, 2008)

Defendant Vicki Scotti

While Cantres has named Scotti, he does not allege any conduct by Scotti which constitutes deliberate indifference to a clearly established right as his civil allegations in this case are that unnamed "medical staff" at the Pinellas County Jail violated his Constitutional rights pursuant to 42 U.S.C. § 1983 due to the alleged failure to treat him properly for his HIV positive condition; furthermore, Cantres cannot overcome Scotti's qualified immunity, as his scant references to Scotti clearly demonstrate that any conduct by Scotti with respect to Cantres solely was in the context of Scotti's employment as a Registered Nurse at the Pinellas County Jail.

As demonstrated in Cantres's Complaint, Cantres's HIV positive status was known to medical personnel at the Pinellas County Jail, and Cantres alleges that he complained to unnamed medical staff of symptoms of constipation, weight loss, night sweats and nightmares. See, Attachments to Cantres's Complaint. Of importance to the

motion to dismiss related to Scotti is the fact that while Cantres continually alleges that unnamed "medical staff" failed to provide him the care that he believed he needed, none of these allegations related to unnamed "medical staff" have anything to do whatsoever with Scotti's alleged conduct as related to Cantres.

Rather, as to Scotti, Cantres merely alleges Brennan investigated a grievance by Cantres concerning his medical care, and Scotti signed the conclusions. This allegation is insufficient to state a constitutional claim under 42 U.S.C. § 1983 against Scotti who, on the face of Cantres's Complaint, does not appear to have engaged in any of the conduct complained of relating to medical treatment, or a lack thereof, and who is entitled to qualified immunity. Cantres cannot show that Scotti was deliberately indifferent to a clearly established constitutional right and cannot show that Scotti is not entitled to qualified immunity. Here, there are no allegations that Scotti disregarded any risk of harm to Cantres. Rather, the only factual allegations related to Scotti are that she co-signed the grievance investigation conducted by Brennan. Brennan's review of the treatment requests and prescribed treatment and follow-up are supported by Cantres's own Complaint allegations and Attachments. See Attachments to Cantres's Complaint. This factual allegation of signing an investigation conducted by another, without more, is insufficient to establish deliberate indifference to any clearly established constitutional right. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.").

Scotti is entitled to qualified immunity for Cantres's claims because the only allegations pertaining to Scotti demonstrate that any conduct attributed to her was within

14

her discretionary authority in signing off on the investigation by Brennan of Cantres's grievance pursuant to the grievance procedure of the Pinellas County Jail thereby triggering qualified immunity.

### Defendant Rick Brennan

While Cantres has named Brennan, he does not allege any conduct by Brennan which constitutes deliberate indifference to a clearly established right as his civil allegations in this case are that unnamed "medical staff" at the Pinellas County Jail violated his Constitutional rights pursuant to 42 U.S.C. §1983 due to the alleged failure to treat him properly for his HIV positive condition. Cantres cannot overcome Brennan's right to qualified immunity, as his few references to Brennan demonstrate that any conduct by Brennan with respect to Cantres solely was in the context of Brennan's employment as an Registered Nurse at the Pinellas County Jail.

Of importance to the motion related to Brennan is the fact that while Cantres continually alleges that unnamed "medical staff" failed to provide him the care that he believed he needed, none of these allegations related to unnamed "medical staff" have anything to do whatsoever with Brennan's alleged conduct as related to Cantres. Rather, as to Brennan, Cantres merely alleges Brennan investigated a grievance by Cantres concerning his medical care. This allegation is insufficient to state a constitutional claim under 42 U.S.C. § 1983 against Brennan who, on the face of Cantres's Complaint, does not appear to have engaged in any of the conduct complained of relating to medical treatment, or a lack thereof, and who is entitled to qualified immunity. Here, there are no allegations that Brennan disregarded any risk of harm to Cantres. Rather, the only factual allegations related to Brennan are that Brennan investigated a grievance wherein Cantres

alleged that he was not treated appropriately. Brennan's review of the treatment requests and prescribed treatment and follow-up revealed that Cantres had not brought the same issues that he put in his grievance to the attention of medical staff; that he had been seen by medical personnel; that he had been prescribed treatment for his complaints, and the Cantres refused to comply with the treatment prescribed. See Attachments to Cantres's Complaint (which support these conclusions by Brennan). These factual allegations, without more , are insufficient to establish deliberate indifference to any clearly established constitutional right, particularly where there is no allegation whatsoever that treatment was requested of, and denied by, Brennan.

In this case, while Cantres alleges that he has a serious medical condition, HIV, for which he believes he was not properly treated, the facts asserted do not state a claim of deliberate indifference to his constitutional rights by the individuals identified as defendants in the Complaint, including Brennan. Indeed, Cantres specifically admits, by virtue of the exhibits he attaches to his Complaint, that he requested treatment from medical staff at the Pinellas County Jail, that those requests were received and responded to in the form of Nurse Sick Calls and visits with the ARNP at the Healthcare Division Clinic, during which time said unnamed medical staff requested and researched his prior HIV treatment protocols, discovered that he was not following said protocols, and encouraged him to follow the prescribed treatment provided to him at the jail -- treatment that Cantres admits in both the Exhibits, as well as the body of his allegations, that he refused because he did not believe it to be the correct treatment.

Regardless of whether Cantres has adequately pled deliberate indifference -- which as described above, he has not, Brennan is entitled to qualified immunity for

16

Cantres's claims because the only allegations pertaining to Brennan demonstrate that any conduct attributed to him was within his discretionary authority as the investigating Registered Nurse for Cantres's grievance pursuant to the grievance procedure of the Pinellas County Jail.

After reading Cantres's complaint in a liberal fashion, the Court finds that Cantres can prove no set of facts in support of his claims that would entitle him to relief. Therefore, Defendants Bailey's, Scotti's and Brennan's motions to dismiss will be granted.

Accordingly, the Court orders:

That Defendants' motions to dismiss (Doc. 15, 16, 17) are granted, without prejudice to Cantres's filing a new Complaint in a new case with a new case number. The Clerk is directed to close this case.

ORDERED at Tampa, Florida, on August 20, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Fernando Cantres, Jr.